UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL MEDICI, DENNIS LEET, JOHN KUKIELKA, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 15 C 5891 |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the motion of Defendant City of Chicago (the "City") to dismiss the complaint brought by Plaintiffs Daniel Medici ("Medici"), Dennis Leet ("Leet"), and John Kukielka ("Kukielka"), individually, and on behalf of all others similarly situated (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below, the City's motion to dismiss is granted.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Plaintiffs' complaint (the "Complaint") are accepted as true. The Court draws all reasonable inferences in favor of Plaintiffs. Plaintiffs are currently employed as patrol officers with the Chicago Police Department (the "CPD"). The

City is a municipal corporation organized and existing under the laws of the State of Illinois. Among the City's divisions is the CPD. Medici, a United States Marine, was hired by the CPD in August 2005. Kukielka was hired by the CPD in December 2009 and Leet has worked for the CPD since November 1999. Prior to accepting employment with the CPD, Kukielka and Leet served in the United States Air Force.

Plaintiffs claim that on June 8, 2015, the CPD issued changes to its uniform policy, requiring on-duty officers "representing the Department, whether in uniform, conservative business attire or casual dress," to cover tattoos on the hands, face, neck, and other areas not covered by clothing, with skin tone adhesive bandages or tattoo covers (the "Tattoo Policy"). Plaintiffs allege that the City not only failed to bargain with the Police Union before changing the dress code, but that it also failed to fully consider possible alternatives to this broad-sweeping ban. Plaintiffs also allege that the City's explanation for the Tattoo Policy is to "promote uniformity and professionalism."

Medici has two tattoos—one relating to his military service as a Marine and the other relating to his religious beliefs. Kukielka and Leet each have a religious tattoo. Under the Tattoo Policy, these tattoos must be covered up while the officers are on-duty or representing the CPD. Patrol officers who must wear extra clothing or cover-up adhesive bandages allege that since the creation of the Tattoo Policy, they have experienced overheating in warm weather months, as well as skin irritation and discomfort from the adhesive bandages.

On July 2, 2015, Plaintiffs filed their Complaint alleging that the City violated 42 U.S.C. § 1983 ("Section 1983") by infringing on their First Amendment rights. Plaintiffs also allege that the Tattoo Policy is impermissibly broad. Plaintiffs urge this Court to: (i) certify this action under Fed. R. Civ. P. 23(b)(2); (ii) grant declaratory judgment finding that the Tattoo Policy is unduly broad and that it violates Plaintiffs' First Amendment rights; (iii) award Plaintiffs their attorneys' fees, costs, and disbursements; and (iv) award Plaintiffs any other relief the Court deems proper. On July 29, 2015, the City moved to dismiss pursuant to Rule 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise her right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A claim must be facially plausible, meaning that the pleadings must allow the court to draw the reasonable inference that the defendant is liable for the purported misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claims must be described "in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting

*Twombly*, 550 U.S. at 544). "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements [ ]" are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 663.

## DISCUSSION

In the instant motion, the City argues that the Court is permitted to balance both parties' interests at this early pleadings stage and should dismiss the Complaint as a matter of law because in their Complaint, Plaintiffs elected to include the City's interests in executing the Tattoo Policy—to "promote uniformity and professionalism" throughout the CPD. Plaintiffs disagree, and insist that discovery is necessary before the Court can weigh the parties' interests.

In addressing the Plaintiffs' First Amendment claims, the parties differ as to whether we should apply the balancing test articulated in *Pickering v. Board of Education of Township High School District 205, Will County*, 391 U.S. 563 (1968) or the test from *United States v. National Treasury Employees Union (NTEU)*, 513 U.S. 454 (1995). If the Court finds that the test in *Pickering* applies, specifically that a restraint on government employee speech must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest[s] of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," 391 U.S. at 568, then the Court is able to perform the balancing test on the pleadings, prior to any discovery, if other circumstances are met. *See Chi. Sch. Reform Bd. of Trs. v. Substance, Inc.*, 79 F.

Supp. 2d 919, 935-36 (N.D. Ill. 2000) (quoting *Klug v. Chi. Sch. Reform Bd. of Trs.*, 197 F.3d 853, 857 (7th Cir. 1999) (internal citations omitted). "While courts ordinarily are reluctant to perform the *Pickering* balancing test on the basis of the pleadings . . . where a plaintiff chooses to plead particulars, and those particulars 'show that he has no claim, then he is out of luck—he has pleaded himself out of court.'" *Chi. Sch. Reform Bd. of Trs.*, 79 F. Supp. 2d at 935 (quoting *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir. 1994); *see also Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("[l]itigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail."). However, if the Court determines that the heightened standard set forth in *NTEU* is applicable, then the City must make a showing that it has "real, not merely conjectural" harm and that the ban, as applied to Plaintiffs, addresses these harms in a "direct and material way." *NTEU*, 513 U.S. at 475 (citing *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994). *NTEU* requires the City to establish that "the interests of both potential audiences and a vast group of present and future employees[,] in a broad range of present and future expression[,] are outweighed by that expression's 'necessary impact on the actual operation of the Government." 513 U.S. at 468 (citing *Pickering*, 391 U.S. at 571). Such a showing requires some discovery.

A government employer can enact "certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004). However, the Supreme Court

5

has also recognized that employees have a right to speak on matters of public concern. *Id*. Generally, such speech involves concerns regarding government policies that interest the public at large. *Id*. Beyond this category, the Supreme Court has recognized that "when government employees speak or write on their own time on topics unrelated to their employment, the speech can have First Amendment Protection," unless the government provides a strong justification, beyond mere speculation, for regulating the speech. *Id*. at 80 (citing *NTEU*, 513 U.S at 465, 475).

This Court is convinced that the City's Tattoo Policy does not violate Plaintiffs' First Amendment rights under the analysis articulated in *Pickering* or *NTEU*. However, before the Court can engage in the balancing test articulated in *Pickering*, we must first determine whether the employee is speaking as a citizen and whether the speech at issue involves matters of public concern. The Supreme Court has noted that "[t]he repeated emphasis in *Pickering* on the right of a public employee 'as a citizen, in commenting upon matters of public concern,' was not accidental." *Connick v. Myers*, 461 U.S. 138, 143 (1983). "To require *Pickering* balancing in every case where speech by a public employee is at issue, no matter the content of the speech, could compromise the proper functioning of government offices." *City of San Diego, Cal.*, 543 U.S. at 82 (citing *Connick*, 461 U.S. at 143). The Supreme Court has provided some guidance for determining what constitutes "a matter of public concern." For example, they have stated that "public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value

and concern to the public at the time of publication." *City of San Diego, Cal.*, 543 U.S. at 83-84.

In the instant case, the Court finds that Plaintiffs' tattoos are a form of personal expression, and not a form of speech on matters of public concern. When an individual decides to place a symbol, a set of words, or a design on his or her body, he or she is engaging in a form of personal expression, rather than a form of commentary on the interests of the public. Furthermore, on-duty Plaintiffs are not part of the citizenry at large, but instead government employees, whose speech may be subject to restrictions that, if applied to the general public, may be unconstitutional. Therefore, because the "speech" at issue does not involve citizens commenting on matters of public concern, the *Pickering* balancing test is not applicable. *City of San Diego, Cal.*, 543 U.S. at 82 (citing *Connick*, 461 U.S. at 143). However, even if this Court were to find that the tattoos constituted citizen speech on matters of public concern, as the City has assumed for purposes of its motion to dismiss, the balance substantially weighs in favor of the City as outlined below.

Assuming Plaintiffs were citizens commenting on matters of public concern, then the test articulated in *Pickering* requires the Court to "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest[s] of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

7

In this case, the City's interest in maintaining a professional and uniform police force substantially outweighs Plaintiffs' interests in personal expression through the display of their tattoos while on-duty. Police officers have the difficult responsibility of ensuring public safety and maintaining order among the populous. *See Volkman v. Ryker*, 736 F.3d 1084, 1092 (7th Cir. 2013) (citing *Kokkinis v. Ivkovick*, 185 F.3d 840, 845 (7th Cir. 1999)). In order to achieve these goals, the public must trust and respect the police officers charged with this difficult duty. Due to a tattoo's unique character, if this Court allowed on-duty police officers to display their tattoos, we would undermine the CPD's ability to maintain the public's trust and respect, which would negatively impact the CPD's ability to ensure safety and order.

Tattoos, as a form of personal expression, are frequently symbolic in nature. These symbols are often displayed without the use of words, which typically convey precise thoughts and meanings. Consequently, a tattoo's symbolic nature allows a viewer to attribute any particular meaning to that symbol. As such, the meaning of a single symbol can be easily misinterpreted. The idea that meanings of symbols can often be confused is demonstrated by the case of *Stephenson v. Davenport Community School District*, where a high school student's modest hand tattoo was interpreted as a gang symbol. 110 F.3d 1303, 1305 (8th Cir. 1997). While the student maintained that the cross, tattooed between her thumb and index finger, was not a religious or a gang symbol, her high school attributed its own meaning to the symbol. Consider

another example of a symbol that was recently the subject of public debate: the Confederate flag. For some, the Confederate flag signifies honor and valor, displayed in recognition of the many who gave their lives in defense of strongly held beliefs. For others, that same flag epitomizes the subjugation of an entire race of people and represents disobedience to the principle our Nation holds dear, that all men are created equal. Due to the fact that symbols can so easily be misinterpreted, regulation of tattoos by their content would be unworkable and ineffective.

Turning back to the *Pickering* test, the Court finds that an on-duty police officer's public display of any tattoo imaginable may, among other things, cause members of the public to question whether allegiance to their welfare and safety is paramount. Thus, the CPD's interest in ensuring that professionalism and uniformity is maintained, in an effort to allow the CPD to efficiently conduct its affairs, substantially outweighs Plaintiffs' interests in personal expression by way of displaying their tattoos while on-duty.

Just as Plaintiffs cannot establish that their First Amendment rights have been violated under the *Pickering* analysis, they are equally unsuccessful in showing a First Amendment violation under the test articulated in *NTEU*. In *NTEU*, the speech took place outside the workplace, the speech addressed matters of public concern, the speech restriction was a "wholesale deterrent to a broad category of expression by a

massive number of potential speakers," and the speech had little, if any, "adverse impact on the efficiency" of the employees' workplace. 513 U.S. at 465, 467.

Unlike the speech at issue in *NTEU*, the speech in the instant case does not occur outside the workplace. We have held that the exposure of Plaintiffs' tattoos, while on-duty, has the appearance of being connected to the CPD. We have also held that Plaintiffs' tattoos are a form of personal expression and not a form of public commentary on interests of the public, differentiating the present facts from the facts of *NTEU*. Furthermore, contrary to the speech restriction in *NTEU*, the Tattoo Policy is not a "whole sale deterrent" of expressive speech by a massive number of potential speakers. The Tattoo Policy requires Plaintiffs to cover visible tattoos only while on-duty. It does not ban tattoos, it does not require the removal of tattoos, and it does not prevent Plaintiffs from displaying tattoos while off-duty. Finally, unlike *NTEU*, where the Court stated that the speech had little, if any, adverse impact on the efficiency of the government employers, *see NTEU*, 513 U.S. at 465, Plaintiffs' tattoos are contrary to and harmful to the CPD's legitimate objective of maintaining a professional and uniform police force.

Therefore, for all these reasons, the test articulated by the Court in *NTEU* is not applicable to the facts of the instant case. Even if the Court were to apply the test articulated in *NTEU*, it is apparent that the City has established legitimate and important interests that would be compromised if Plaintiffs were permitted to display

their tattoos while on-duty. As a result, when assessed under relevant case law, the issues presented by the motion to dismiss and the straightforward interests of the parties involved are capable of decision without the necessity of discovery.

## CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss is granted.

_____
Charles P. Kocoras
United States District Judge

Date: 10/27/2015